**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Garland Rivers Baker, | ) | C/A No. 2:15-CV-01471-DCN-MGB |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | OF THE MAGISTRATE JUDGE |
| Lieutenant Grant Cannon, Chief of Police | ) | |
| David Jones, & Town of Turbeville, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The Plaintiff brings this action under Title 42, United States Code, Section 1983 and under South Carolina state law. The Plaintiff's Amended Complaint contains causes of action for Abuse of Criminal Process, Malicious Prosecution, Violation of First Amendment Right to Free Speech under § 1983, Civil Conspiracy, Intentional Infliction of Emotional Distress, Respondeat Superior and Declaratory Judgment declaring the unconstitutionality of Turbeville Town Ordinance 15-9.[1] (Dkt. No. 21.) This matter is before the court on Plaintiff's Partial Motion for Summary Judgment (Dkt. No. 33) and Defendants' Motion for Summary Judgment. (Dkt. No. 29.) Under Local Civil Rule 73.02(B)(2) of the United States District Court for the District of South Carolina, pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge.

---

[1] The Plaintiff conceded summary judgment on his claims for Civil Conspiracy and Intentional Infliction of Emotional Distress in Plaintiff's Memo[sic] in Opposition to Defendants' Motion for Summary Judgment. (Dkt. No. 35.) Therefore, as to those two causes of action this court recommends that the Defendants' Motion for Summary Judgment (Dkt. No. 29) be granted as to all Defendants.

The Plaintiff brought this action on March 3, 2015, in the Clarendon County Court of Common Pleas, and the Defendants removed the case to federal court on April 2, 2015. (Dkt. No. 1.) The Plaintiff filed her Amended Complaint, with leave of the court, on September 22, 2015, and the Defendants answered on October 6, 2015. (Dkt. Nos. 21, 25.) The Defendants filed their Motion for Summary Judgment on all claims on February 1, 2016. (Dkt. No. 29.) The Plaintiff responded on February 26, 2016, and the Defendants replied on March 7, 2016. (Dkt. Nos. 35, 37.) The Plaintiff filed Plaintiff's Motion for Partial Summary Judgment on February 15, 2016.[2] (Dkt. No. 33.) The Defendants responded on March 3, 2016. (Dkt. No. 33.)

## ALLEGED FACTS

The Plaintiff resides in the town of Turbeville ("the Town"), South Carolina. (Dkt. No. 21 ¶1.) The Plaintiff was arrested by Defendant Jones, the Chief of Police for the town of Turbeville, on March 8, 2013, for the violation of Turbeville Town Ordinance 15-9. (Dkt. Nos. 21 ¶¶ 17, 46; 29-3 ¶ 16.) Turbeville Town Ordinance 15-9 states as follows:

> It shall be unlawful for any person or persons willfully to approach nearer than twenty (20) feet to any town employee for the purpose of interfering or stopping that employee from carrying out his/her duties.

(Dkt. No. 30.)

The Plaintiff's arrest was based on an interaction between the Plaintiff and Defendant Cannon, a lieutenant with the Turbeville Police Department, on February 15, 2013. (Dkt. No. 21

---

[2] On the face of the Plaintiff's motion, the Plaintiff moves for summary judgment on his declaratory action to declare the Ordinance unconstitutional on its face and as applied to the Plaintiff. (Dkt. No. 33.) In the second sentence of the attached memorandum, the Plaintiff "seeks summary judgment on his (a) Cause of Action for violation of 42 U.S.C. § 1983 to the extent that this ordinance is unconstitutional on its face and as applied to Baker." (Dkt. No. 33-1 at 1.) At the conclusion of the Memo, the Plaintiff only refers to the declaratory relief. (Dkt. No. 33-1 at 14.) Nowhere in the memo is § 1983 specifically discussed. Therefore this court is restricting the Plaintiff's Motion to the causes of action stated on the face of the motion and not including his § 1983 claim.

¶ 13.) Prior to that date, the Plaintiff alleges that he reported incidents of Defendant Cannon excessively speeding in his unmarked police vehicle to Town Administrator Rodney Johnson twice, to Defendant Jones once, and to the police commissioner, Gerald McElveen, once. (Dkt. No. 29-3 at 6-15.)  On February 15, 2013, Defendant Cannon was conducting patrol duties on Main Street in Turbeville and observed a motorist[3] driving 52 mph in a 35 mph zone. (Dkt. No. 29-2 ¶ 3.)  Defendant Cannon pursued the vehicle and pulled over the motorist in a parking lot. (*Id.* ¶¶ 3-4.)   Defendant Cannon alleges he activated his blue lights while pursuing the motorist. (*Id.*) The Plaintiff was driving his vehicle in the area of Main Street as well. The Plaintiff alleges that Defendant Cannon did not use blue lights or siren during the pursuit of the motorist and almost caused the Plaintiff to have a collision due to Defendant's high rate of speed. (Dkt. No. 21 ¶ 13.)  A review of the dash camera video shows that Defendant Cannon activated his blue lights after he pulled out to pursue the motorist and had accelerated to 70 mph but did not activate a siren. (Dkt. No. 35-3.)

The motorist's traffic stop was captured on Defendant Cannon's dash camera. (Dkt. No. 35-3.)  Defendant Cannon approached the motorist and informed him of the reason for the traffic stop. (*Id.*)  As Defendant Cannon returned to his unmarked patrol car, the Plaintiff walked up to the motorist's open window and appeared to have a discussion with the motorist.  (*Id.*) Defendant Cannon then approached the Plaintiff at the motorist's window and asked if the Plaintiff needs assistance. (*Id.*)  The Plaintiff asked Defendant Cannon if the town administrator had spoken to him about speeding through town. (*Id.*) The Plaintiff informed Defendant Cannon that the Plaintiff had almost wrecked as a result of Defendant Cannon's pursuit of the motorist. (*Id.*) Defendant Cannon informed the Plaintiff that the town administrator had not spoken to him.

---

[3] The motorist is not a party to this action.

(*Id.*)  The Plaintiff told Defendant Cannon to come with him to see the town administrator. (*Id.*)

Defendant Cannon then twice told the Plaintiff he needed to leave or he would be arrested. (*Id.*)

The Plaintiff then got in his truck and left. (*Id.*)

Defendant Cannon reported his interaction with the Plaintiff to Defendant Jones. (Dkt.

Nos 29-2 ¶ 9; 29-3 ¶ 5.) Defendant Jones reviewed the dash camera video when he returned to

work and concluded that probable cause existed to charge the Plaintiff with a violation of

Turbeville Town Ordinance 15-9. (Dkt. No. 29-3 ¶ 8.)  Defendant Jones prepared an affidavit

and sought a warrant for the Plaintiff from Turbeville Municipal Judge Luci Coleman on

February 21, 2013. (*Id*. ¶ 11)  Judge Coleman determined probable cause existed and issued the

warrant. (*Id.* at 11-12.)

The Plaintiff was arrested in his front yard by Defendant Jones on March 8, 2013. (Dkt.

No. 29-3 ¶¶ 16-17.) Defendant Jones allowed the Plaintiff to make arrangements for his dog and

secure his house and car before transporting him to the Clarendon County Detention Center. (*Id.*

at ¶ 16.)  The Plaintiff was placed in handcuffs once he arrived at the jail. (*Id.*; Dkt. No. 29-4 at

29.)  During the booking process, Defendant Jones made a written notation requesting that the

Plaintiff be given a personal recognizance ("PR") bond. (Dkt. No. 29-3 at ¶ 16.) The Plaintiff

spent the night in jail and was released the following morning on a PR bond. (Dkt. No. 29-4 at

37.) During his bond hearing, the Plaintiff was in handcuffs and in leg shackles. (Dkt. No. 21 ¶

17.)

Prior to the Plaintiff's trial scheduled for March 28, 2013, the Plaintiff and Defendant

Jones met at Turbeville Town Hall. (Dkt. Nos. 29-3 ¶¶18-21; 29-4 at 30-34.) Defendant Jones

explained the charge to the Plaintiff and showed the Plaintiff a video of a traffic stop where a

man was shot by a deputy sheriff after walking up with a knife. (*Id.*)  The Plaintiff stated in his

deposition that he "probably apologized…for what [he] did" referring to approaching Defendant Cannon during the traffic stop. (Dkt. No. 29-4 at 31.) The Plaintiff and Defendant Jones discussed that the Plaintiff's wife had recently passed away and that the Plaintiff was having family problems. (Dkt. No. 29-3 ¶ 21.)

In his affidavit, Defendant Jones avers that, following his meeting with the Plaintiff, Defendant Jones felt that the Plaintiff understood what he had done was wrong and dangerous and would not do it again. (Dkt. No. 29-3 at ¶ 22.) Defendant Jones felt sorry for the Plaintiff. (*Id.*)  Defendant Jones asked Judge Coleman to *nolle prosse* the Plaintiff's warrant, and Judge Coleman granted the request. (*Id.*)  Defendant Jones never conferred with Defendant Cannon on the decision to obtain the warrant or dismiss the warrant. (*Id.* ¶ 23.) The Plaintiff reported to court for his trial on March 28, 2013, and was told that the charge had been dismissed but was not given an explanation for the dismissal. (Dkt. No. 21 ¶18.)

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## ANALYSIS

### 1. Constitutionality of Turbeville Town Ordinance 15-9

Both parties have filed motions for summary judgment concerning the constitutionality of Turbeville Town Ordinance 15-9 ("Ordinance").  This court finds that the Ordinance is unconstitutionally vague for the reasons stated herein.  Turbeville Town Ordinance 15-9 states as follows:

> It shall be unlawful for any person or persons willfully to approach nearer than twenty (20) feet to any town employee for the purpose of interfering or stopping that employee from carrying out his/her duties.

(Dkt. No. 30.)

Statutes and ordinances are presumed to be constitutional. *Fitts v. Kolb,* 779 F.Supp. 1502, 1513 (D.S.C.1991). The Plaintiff bears the burden of proving the Ordinance in unconstitutional. *Id.* A federal court must be mindful to "'avoid a statutory interpretation which raises constitutional questions if there is a reasonable reading of the statute which does not [raise] those issues.'" *Id.* (quoting *Bob Jones Univ. v. Johnson,* 396 F.Supp. 597, 608 (D.S.C.1974)). The Plaintiff alleges that the Ordinance is unconstitutional on its face. (Dkt. No. 21 at ¶¶46-50.)  A "facial" challenge to a law alleges that the law is "invalid in toto—and therefore incapable of any valid application." *Steffel v. Thompson,* 415 U.S. 452, 474 (1974). Before determining if the Ordinance is overbroad or vague, the court must first "determine

whether the enactment reaches a substantial amount of constitutionally protected conduct."
*Village of Hoffman Estates v. The Flipside, Hoffman Estates,* 455 U.S. 489, 494 (1982) (footnote omitted).

"Only a statute which is substantially overbroad may be invalidated on its face." *City of Houston v. Hill,* 482 U.S. 451, 458 (1987) (citing *New York v. Ferber,* 458 U.S. 747, 769 (1982); Broadrick v. Oklahoma, 413 U.S. 601 (1973)). An ordinance is not overbroad "on its face merely because it is possible to conceive of a single impermissible application." *Id.* (internal quotations and citation omitted). A criminal statute or ordinance "must be scrutinized with particular care." *City of Houston,* 482 U.S. at 459 (citing *Winters v. New York,* 333 U.S. 507, 515, (1948)). A criminal statute or ordinance which makes "a substantial amount of constitutionally protected conduct" unlawful "may be held facially invalid even if they also have legitimate application." *Id.* For a statute to be unconstitutionally overbroad, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 801, (1984)

A statute or ordinance is unconstitutionally vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732 (2000) (citing *City of Chicago v. Morales,* 527 U.S. 41, 56–57 (1999)). The Supreme Court has explained the dangers of vague laws as follows:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A

> vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.'

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (footnotes omitted). As with an overbreadth analysis, courts must have less tolerance for vague laws when the specter of criminal penalties loom. *McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 548 (D.S.C. 2013) (citing *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 499 (1982)).  The Supreme Court "has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Estates*, 455 U.S. at 499.

> Perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Id.*

To determine if the Ordinance is facially invalid, "this court must first 'determine whether the enactment reaches a substantial amount of constitutionally protected conduct.'" *McCoy*, 929 F. Supp.2d at 548 (citing *Vill. of Hoffman Estates*, 455 U.S. at 494.) The Defendants allege that the Ordinance "does not purport to govern speech, expression, or association at all." (Dkt. No. 29-1.)  The Defendants argue that the Ordinance merely regulates conduct by forbidding individuals from approaching within twenty feet of town employees for certain purposes.  The Defendants' argument that the Ordinance solely regulates conduct and not speech is without merit.  While the Ordinance does punish conduct, culpability under the ordinance arises from the intent of an individual to interfere or stop a town employee from carrying out his or her duties.  This interference could often take the form of constitutionally protected speech.

Courts have held that ordinances and statutes that create "buffer zones" from speech implicate First Amendment rights. *See e.g. Hill v. Colorado*, 530 U.S. 703 (2000) (in upholding a Colorado law that made it unlawful for any person within 100 feet of an abortion clinic knowingly to approach within eight feet of another person to provide materials or counseling without that person's consent, the Court held that the "First Amendment interests of petitioners are clear and undisputed."); *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 686 (8th Cir. 2012) (in upholding an ordinance that barred picketing and protest activities from occurring within 300 feet of a funeral, the Eighth Circuit held that the ordinance properly allowed for the plaintiffs' constitutionally protected speech.)

Further evidence of the implication of constitutionally protected speech by the Ordinance arises from the Ordinance's requirement that an unlawful approach of a town employee requires the intent to interrupt or stop the employee. As evidenced by the facts in the case at bar, some of the town's employees are police officers. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462-63 (1987). "Speech directed at police officers may only be censored where it is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *McCoy*, 929 F. Supp. 2d at 548 (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949)).

In *City of Houston, Tex. v. Hill,* the Supreme Court held that an ordinance that made it "unlawful…in any manner…[to] interrupt any policeman" infringed on an individual's right to verbally oppose or challenge the police. 482 U.S. at 462-63 (1987). The Court noted that "we

have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Id.* at 465.

The Defendants argue that the Ordinance in the case at bar is not overbroad because it contains a distance requirement. (Dkt. No. 29-1 at 26.) The Defendants argue the distance limitation is reasonable because "the closer an individual approaches to [a town] employee, such as a police officer, the more likely it is that a person will succeed in interfering with the employee's performance of his official duties…and…the more likely it is that an individual can cause physical harm to the employee." (*Id.*)   Similar to the Defendants in the case at bar, the City of Houston argued that the ordinance banned "core criminal conduct" and that the City did not use the ordinance "as a subterfuge to control or dissuade free expression." *Id.* at 459.  The Supreme Court was not persuaded by the City's argument for two reasons: (1) the ordinance dealt with speech by prohibiting verbal interruption of police officers and (2) the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.  *Id.* at 460-61.  The Defendants' argument in the case at bar suffers the same problems as the City of Houston's argument.  By criminalizing approaching within 20 feet of a town employee "for the purpose of interfering or stopping that employee," the Ordinance prohibits verbal interruption of police officers, and any other town employee, and much of that speech is afforded constitutional protection.

The Ordinance in the case at bar is even broader than the ordinance in the *City of Houston* because it applies to approaching **any** town employee.  The Ordinance would criminalize approaching closer than twenty feet to the mayor or city council members at a public meeting if the intent was to express an opinion that would interrupt or stop the meeting.  Such application would criminalize protected speech.  See *Collinson v. Gott*, 895 F.2d 994, 1000 (4th

Cir.1990) (Phillips, J., concurring) ("Speech at public meetings called by government officials for discussion of matters of public concern is entitled to normal first amendment protections against general restrictions or *ad hoc* parliamentary rulings by presiding officials."). The Ordinance reaches a substantial amount of constitutionally protected conduct.

The Ordinance is unconstitutionally vague. While the Ordinance may very well be overbroad as well, this court recommends that the Ordinance be declared invalid because it is so obviously vague. The court does not reach the Ordinance's potential overbreadth. While only one prong of the test put forth in *Hill v. Colorado* is required for an ordinance to be unconstitutionally vague, the Ordinance in the case at bar both "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and "authorizes…arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. at 732.

The Supreme Court of South Carolina held that an ordinance making "interference" with a police officer unlawful, without defining the word "interference," was unconstitutional. *Town of Honea Path v. Flynn*, 255 S.C. 32, 39, 176 S.E.2d 564, 567 (1970). The *Flynn* Court reasoned that the ordinance was unconstitutionally vague because it failed to state "just what kind of word or words would amount to interference." *Id.* The Court warned that "[t]o allow police officers…the discretion to arrest and prosecute those whom they feel have made inappropriate remarks upon a charge of interference would… invite gross abuses of discretion and impose unfair penalities [sic] and burdens upon the citizenry." *Id.* at 40, 567. The Court was disturbed that a "conviction under this ordinance may well have rested upon nothing more than mere words uttered by the appellant which were not pleasing to the local police officers who obviously did not like anyone questioning or challenging their authority." *Id.*

The Ordinance in the case at bar suffers the exact failings as the ordinance in *Town of Honea Path v. Flynn*. The word "interfering" is not defined. Both state and federal courts in South Carolina have held that the word "interfere," or its conjugates, if left undefined, is subject to multiple meanings and interpretations. *Flynn*, 255 S.C. at 40; *McCoy*, 929 F. Supp. 2d at 552. The Ordinance in the case at bar fails to define "interfering." (*See* Dkt. No. 30 at 2.) A person of ordinary intelligence could easily interpret the Ordinance to only prohibit physical interference or to prohibit verbal interference as well. The facts of the case at bar illustrate this point. The Plaintiff never physically interfered with Defendant Cannon in any way. The Plaintiff spoke with Cannon and then left the scene after he was told to twice by Cannon. Yet his words combined with being within 20 feet of Cannon's body criminalized his conduct under the Ordinance. The Defendants argue that the Ordinance is meant to protect town employees from physical altercations, yet in the case at bar the Ordinance was used to criminalize the Plaintiff's speech.[4] Nothing in the text of the Ordinance limits its application to physical interference. It is undisputed that no physical altercation took place in the case at bar.

The Supreme Court has held that "an ambiguous term may be given more precise content by the neighboring words with which it is associated." *United States v. Stevens*, 559 U.S. 460, 474 (2010) (quotations omitted). In *McCoy*, the District Court noted that the challenged ordinance "include[d] only two terms—interfere and molest" in contrast to other ordinances that "include[d] series of terms having related meanings and thus provide additional context for the person of ordinary intelligence to understand what conduct is prohibited." 929 F. Supp. 2d at

---

[4] The court notes that the Defendants' affidavits illustrate the varied meanings that the Ordinance has. Defendant Cannon, who did not arrest or prosecute the Plaintiff, avers that the Plaintiff's presence at the scene "presented a distraction which interfered" with Cannon's ability to finish the traffic stop and "created a potentially dangerous situation." (Dkt. No. 29-2 at 3.) Defendant Jones avers in his affidavit that the Plaintiff's presence at the scene was for the "purpose of stopping Lt. Cannon from conducting his official duties…." (Dkt. No. 29-3 at 4-5.)

553.  Like *McCoy,* the Ordinance in the case at bar includes only two terms—"interfering or stopping." (Dkt. No. 30 at 2.)  Reading the word "interfering" in the context of the sentence does not clarify what activities the Ordinance criminalizes to a person of ordinary intelligence.

The Ordinance contains a scienter requirement.  Scienter is defined as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission." Black's Law Dictionary (10th ed. 2014).  The Ordinance punishes a person who "willfully[5]" approaches within twenty (20) feet of a town employee with the intent to interfere or stop the employee. (Dkt. No. 30 at 2.)  The Defendants argue that the addition of the scienter requirement limits the Ordinance. (Dkt. No. 29-1 at 26.)  This is partially true in that the Ordinance requires that a person voluntarily and intentionally violate the twenty foot bubble that surrounds town employees. However, the Ordinance has a second scienter requirement in that a person's entry into the bubble must be done with the "purpose of interfering or stopping" a town employee in order to be punishable.  This second scienter requirement of the Ordinance is where its ambiguity and vagueness lie.  The Ordinance requires that a person have the specific intent to interfere or stop a town employee at the time the twenty foot boundary is breached. While it would not necessarily cure the unconstitutionality of the Ordinance, if the Ordinance merely made it willfully unlawful to approach within 20 feet of a town employee, the Ordinance would not be ambiguous.  Such an ordinance would be clear as to precisely what conduct was prohibited.  The scienter requirement of the Ordinance is what creates the ambiguity.

The Ordinance is subject to discretionary enforcement. As stated by the District Court in *McCoy*, the Ordinance in the case at bar "is broad enough to cover protected speech, and by

---

[5] "Willful" is defined as "[v]oluntary and intentional, but not necessarily malicious." Black's Law Dictionary (10th ed. 2014).

failing to include a standard by which citizens and police officers can determine whether interference or molestation is unlawful, the statute at the very least authorizes, if not encourages, discriminatory enforcement." 929 F. Supp. 2d at 554.  The Ordinance invites the troubling conduct warned of by the Supreme Court of South Carolina in *Flynn*. Because of the ambiguity in the phrase "willfully to approach nearer than twenty (20) feet to any town employee for the purpose of interfering or stopping said employee," the Ordinance could easily be used by police officers to "to arrest and prosecute those whom they feel have made inappropriate remarks upon a charge of interference" leading to "gross abuses of discretion and … unfair penalities [sic] and burdens upon the citizenry." *Flynn,* 255 S.C. at 40.  The statute could be used to arrest a voter who approaches poll workers at a town election to complain about a faulty voting machine, a homeowner who approaches a water meter reader to discuss his bill, or a protester peacefully picketing within twenty feet of a police officer holding a riot line.  The enforcement and interpretation of the Ordinance is left to the discretion of every individual officer.

The discretionary enforcement of the Ordinance is evidenced by the facts of the case at bar.  Defendant Cannon, the only officer present during the Plaintiff's "interference" with the traffic stop, chose not to arrest or charge the Plaintiff and had no involvement in the Plaintiff's arrest and prosecution. (Dkt. No. 29-2 at 4.)  Defendant Jones, however, viewed the incident on the dash camera video and determined "that there was probable cause to believe Mr. Baker had violated" the Ordinance. (Dkt. No. 29-3 at 4.)

As discussed *supra*, the Ordinance is facially invalid because it is unconstitutionally vague, and this Court recommends that the Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 33) be granted as to that claim.

2.  **Constitutionality of Turbeville Town Ordinance 15-9 as Applied to the Plaintiff**

14

The Plaintiff has additionally alleged that the Ordinance is unconstitutional as applied to him. (Dkt. No. 21 ¶50.)  The undersigned agrees.  This court's determination that the Ordinance is facially invalid due to vagueness does not mean its application to the Plaintiff was necessarily unconstitutional. *McCoy*, 929 F. Supp. 2d at 554.  "An 'as-applied' challenge consists of a challenge to a regulation's application only to the party before the court. If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 258 n. 4 (4th Cir.2003) (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758–59 (1988)).  An as-applied challenge is the same as the first prong of a § 1983 claim, i.e. a plaintiff must show that he "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States." *McCoy*, 929 F. Supp. 2d at 554-555

The Plaintiff alleges that the Ordinance as applied to him violated his First Amendment Right to Freedom of Speech and Fourteenth Amendment Due Process Clause. (Dkt. No. 21 ¶ 49.) "The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston*, 482 U.S. at 461.  "A properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (Powell, J., concurring).

However, a citizen's right to verbally confront police officers is not without any limits. "Speech directed at police officers may only be censored where it is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *McCoy*, 929 F.Supp. at 548 (citing *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949)). A majority of the Court in *City of Houston* agreed that "a municipality

constitutionally may punish an individual who chooses to stand near a police officer and

persistently attempt to engage the officer in conversation while the officer is directing traffic at a

busy intersection." 482 U.S. at 463 n. 11 (quotations and citations omitted). Similarly, the

majority agreed that "a person who runs beside an officer pursuing a felon in a public street

shouting at the officer" could "constitutionally be punished under a tailored statute that

prohibited individuals from physically obstructing an officer's investigation" but not "under a

broad statute aimed at speech." *Id.* (quotations and citations omitted).

The dash camera video of the incident shows that the Plaintiff twice asked Defendant

Cannon, "Has the administrator talked with you?" (Dkt. No. 35-3.) Defendant Cannon then

responded, "About what?" The Plaintiff then answered, "About speeding through here like you

did, just did, and almost run over me down there goin' in the tire store." Defendant Cannon then

informed the Plaintiff that Cannon was going to arrest the Plaintiff for "interfering" if he did not

get back into his truck and leave. The Plaintiff then turned to leave and said "let's go." The

Plaintiff appeared to walk back to his truck. Defendant Cannon again told the Plaintiff to get

into his truck or he was going to jail. The Plaintiff left.

The Plaintiff's speech, expressing displeasure at Defendant Cannon's driving, was the

type of speech protected by the First Amendment. The Plaintiff was stating his disagreement

with Defendant Cannon speeding through town. The Plaintiff's speech has not been "shown

likely to produce a clear and present danger of a serious substantive evil that rises far above

public inconvenience, annoyance, or unrest." *McCoy*, 929 F.Supp. at 548. Any potential danger

present during this incident was due to the inherent danger of a traffic stop. There is no evidence

the Plaintiff's speech caused any danger. The video shows that the Plaintiff conducted himself in

a calm manner. The Plaintiff complied with the Defendant Cannon when the Plaintiff was told

to leave or be charged with "interfering."[6]  The Plaintiff did not physically interfere with Defendant Cannon in any way.

The facts of this case are distinguishable from the example of a person attempting to engage a police officer directing traffic given in *City of Houston*.  The majority agreed that such an individual could be punished under a properly tailored ordinance because the individual created a traffic hazard and failed to comply with a valid police order. 482 U.S. at 463 n. 11 (citations omitted).  In the case at bar, the Plaintiff was not in a public roadway and was compliant with the officer. Likewise, the facts of the case at bar are distinguishable from the example of "a person who runs beside an officer pursuing a felon in a public street shouting at the officer" given in *City of Houston*. *Id*.  The Court held that such conduct could be punished as physically obstructing a police officer's investigation.  In the case at bar, the Plaintiff did not physically obstruct Defendant Cannon's investigation and was compliant when asked to leave. This court finds that no genuine issue of material fact exists as to whether the Plaintiff's First Amendment right to free speech was infringed by the Ordinance as applied to him.[7]

### 3.  Qualified Immunity for Defendants Cannon and Jones

Although this court finds that no genuine issue of material fact exists as to whether the Ordinance as applied to the Plaintiff infringed on his constitutional rights, Defendants Cannon and Jones are entitled to summary judgment on this claim under the doctrine of qualified

---

[6] The Court notes that Defendant Cannon's warning to leave or be charged with interfering was heeded by the Plaintiff, yet he was still charged with interfering by Defendant Jones.

[7] This court recognizes that traffic stops are "especially fraught with danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047(1983).  In the case at bar, the Plaintiff was calm and compliant with the officer and left the scene as instructed. Certainly a traffic stop is not the ideal place for a citizen to approach an officer to exercise his First Amendment rights as such conduct could quickly escalate into a dangerous situation.

immunity.[8] A plaintiff's claim that a defendant's application of a constitutionally vague ordinance violated his rights is subject to a qualified immunity analysis. *Hyatt v. Town of Lake Lure*, 225 F. Supp. 2d 647, 664 (W.D.N.C. 2002). "Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects officers from liability for "bad guesses in gray areas" and bases liability on the violation of bright-line rules. *Id*. (quoting *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011)).

To determine whether a defendant is entitled to qualified immunity, the court must examine whether the defendant violated the plaintiff's constitutional or statutory rights and, if so, whether the defendant's "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." *Id*. The clearly established right that was allegedly violated must be established…in a "particularized" sense so that the "contours" of the right are clear to a reasonable official. *Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 2094 (2012). The right at issue in the case at bar is not a general right to not be retaliated against for the exercise of protected speech, but rather "the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Id*.

In *Reichle*, the Supreme Court stated that "[t]his Court has never held that there is such a right." *Id*. Likewise, "the Fourth Circuit has not squarely addressed" whether an individual has a right to be free from a retaliatory arrest that is otherwise supported by probable cause. *McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 560 (D.S.C. 2013); *Newkirk v. Enzor*, No. 4:13-CV-

---

[8] The Town cannot claim qualified immunity because the doctrine of qualified immunity does not extend to municipalities. *McCoy*, 929 F. Supp. 2d at 564 n.8.

01635-RMG, 2015 WL 3853167, at *6 (D.S.C. June 19, 2015) (holding that the right to be free from a retaliatory arrest when the arrest is supported by probable cause has not been addressed by the Fourth Circuit or the Supreme Court.). In the case at bar, it uncontroverted that the Plaintiff was arrested pursuant to a valid arrest warrant signed by a magistrate judge. (Dkt. No. 29-3 at 11.) The warrant was issued on February 21, 2013, and the Plaintiff was arrested on March 8, 2013. (Dkt. No. 29-3 ¶¶ 16-17.) The decision in *Reichle* was issued on June 4, 2012. Because the Plaintiff's right to be free from a retaliatory arrest that was supported by probable cause was not clearly established, Defendants Jones and Cannon are entitled to qualified immunity on the as-applied claim. Therefore, this court recommends granting the Plaintiff's motion on his as-applied challenge as to the Town, but denying the motion as to Defendants Cannon and Jones.

**4. Section 1983 Claim**

The Plaintiff makes a claim under § 1983 alleging that the Defendants retaliated against his exercise of free speech protected by the First Amendment when he was arrested under the Ordinance.[9] (Dkt. No. 21 ¶¶ 29-33.) In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also*

---

[9] The Defendants note that the Plaintiff does not specify whether his malicious prosecution claim is made under § 1983 or state law. (Dkt. No. 29-1 at 12.) Having reviewed the Plaintiff's filings in this case, this court concludes the claim is made under state law. In the Plaintiff's Memo [sic] in Opposition to Defendant's [sic] Motion for Summary Judgment, the Plaintiff only addresses state law and does not mention § 1983 or any federal law. (Dkt. No. 35 at 5.) Additionally the court notes that in the Amended Complaint, the Plaintiff did not cite to § 1983 when alleging his malicious prosecution claim, but did cite to § 1983 when making his First Amendment retaliation claim. (Dkt. No. 21.)

*Gomez v. Toledo*, 446 U.S. 635, 540 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980). In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

As noted by *McCoy*, the Plaintiff's as-applied challenge to the Ordinance is coextensive with the first prong of *Dowe* to show § 1983 liability. *McCoy*, 929 F. Supp. 2d at 554. This court has already found that Defendant Jones and the Town deprived the Plaintiff of his First Amendment rights when he was arrested for his speech to Defendant Cannon.

As with the prior analysis, however, the officers are protected from suit under the doctrine of qualified immunity. The Plaintiff's right to be free from a retaliatory arrest supported by probable cause was not clearly established at the time of the Plaintiff's arrest and, therefore, the qualified immunity doctrine applies. This court recommends that the Defendants' Motion for Summary Judgment be granted as to Defendants Jones and Cannon. [10]

As to the Town of Turbeville, "municipal liability may be imposed [under § 1983] for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). "A municipality may be liable under § 1983 for a single decision of its properly constituted legislative body ... because even a single decision by such a body unquestionably constitutes an act of official government policy." *Id.* An ordinance is an express policy of a municipal body. *McCoy*, 929 F. Supp. 2d at 563. Municipalities cannot assert a qualified immunity defense. *Id.* at 564 n. 8. Because this court has already found that the

---

[10] As to Defendant Cannon, an additional ground to dismiss the claims against him is that the record does not contain any facts that show Defendant Cannon was involved in the Plaintiff's arrest or prosecution. In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). As such, the Plaintiff has failed to state a § 1983 claim against Defendant Cannon because he had no involvement in the alleged retaliation.

Plaintiff has satisfied the first prong of *Dowe*, this court recommends that the Defendants'

Motion for Summary Judgment as to the Town be denied. [11]

### 5.  State Law Claims

#### a.  Abuse of Criminal Process

An abuse of process claim requires the following elements:

> [F]irst, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Scott v. McCain*, 275 S.C. 599, 601, 274 S.E.2d 299, 300 (1981) (quoting *Huggins v. Winn-Dixie*

*Greenville, Inc.*, 249 S.C. 206, 153 S.E.2d 693 (1967)).

---

[11] As noted by the *McCoy* court,

> it is not inconsistent to force the City to undergo a trial while affording qualified immunity to the Officer Defendants. In particular, it is possible that "a situation may arise in which a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality." *Int'l Ground Transp., Inc. v. Mayor of Ocean City,* 475 F.3d 214, 219 (4th Cir.2007). In fact, "such a verdict could result when the individual defendants successfully assert a qualified immunity defense." *Id.* Unlike individuals, municipalities cannot assert the defense of qualified immunity. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Consequently, where individual defendants cause a constitutional violation pursuant to an official policy of the municipality, the individual defendants may escape liability while the municipality may not. *Int'l Ground Transp.,* 475 F.3d at 219.

*McCoy*, 929 F. Supp. 2d at 564 n.8.

As to Defendant Cannon, there is no evidence in the case at bar that he ever used any process at all.  Defendant Cannon did not have any involvement in acquiring, serving, or dismissing the warrant, and therefore is entitled to summary judgment as a matter of law.

Defendant Jones is entitled to judgment as a matter of law because he is not a proper party under the South Carolina Tort Claims Act ("the Act"), § 15-78-10 *et seq.* The Act is the exclusive remedy for any tort committed by an employee of a governmental entity. "An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except…if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."  S.C. Code Ann. § 15-78-70.  The Act "governs all tort claims against governmental entities."  *Hawkins v. City of Greenville*, 358 S.C. 280, 292, 594 S.E.2d 557, 563 (Ct. App. 2004) (citing *Flateau v. Harrelson,* 355 S.C. 197, 203, 584 S.E.2d 413, 416 (Ct.App.2003)).  All governmental entities may be held liable for their torts as a private individual would be liable subject to the limitations and exemptions of the Act.  *Id.* (citing S.C. Code Ann. § 15-78-40 (Supp. 2003)).  S.C. Code Ann. § 15-78-30(d) defines "governmental entity" as "the State and its political subdivisions."  A city is the proper party under the Act for tortious acts committed by employees of a county detention center.  *Hawkins,* 358 S.C. at 292, 594 S.E.2d at 563.  The limitations and exemptions in the act must be liberally construed in order to limit the liability of the State.  *Id.*

The Act prohibits any action against Defendant Jones in his capacity as a police officer. The Plaintiff's allegations against Defendant Jones all fall within the scope of his employment. (Dkt. No. 21 ¶42.) There is no evidence in the record that Defendants Jones' actions regarding the service of the Plaintiff's arrest warrant constituted actual fraud, actual malice, intent to harm,

or a crime involving moral turpitude.  The Court of Appeals of South Carolina has held that the

tort of abuse of process does not require the intent to harm or actual malice and therefore falls

under the Act.  *Swicegood v. Lott*, 379 S.C. 346, 352, 665 S.E.2d 211, 214 (Ct. App. 2008).

Therefore, Defendant Jones is not the proper party to sue under the Act, and this court

recommends summary judgment as a matter of law.

As to the Town, the Plaintiff argues that Chief Jones "decided to arrest and jail Baker" in

order to "shut Baker up." (Dkt. No. 35 at 4.)  The Plaintiff argues that Defendant Jones "obtained

an arrest warrant" to "stop Baker from criticizing Cannon's conduct" (*Id.*at 4-5.)  The Plaintiff's

argument does not contain any cites to the record to support his argument.  "The focus in the

abuse of process action is on the improper use of process **after** it has been issued." *Scott,* 275

S.C. at 600 (emphasis added).  The Plaintiff's allegations regard **why** Defendant Jones obtained a

warrant, not what took place **after** the warrant was issued, and therefore are not proper for an

abuse of process claim. The Plaintiff alleges that Defendant Jones' decision to seek a warrant

was abuse of process.  This is not cognizable under South Carolina law. Additionally, there is no

evidence in the record of any ulterior purpose for Chief Jones obtaining the warrant and then

serving the warrant. There is also no evidence that Chief Jones' service of the warrant was not

proper in the regular conduct of the proceeding.  It is uncontroverted that Chief Jones arrested

the Plaintiff pursuant to a valid warrant signed by a judge.  Chief Jones did not take any actions

that were not customary in the service of an arrest warrant.  No genuine issues of material fact

exist as to the Plaintiff's claim for abuse of process, and all Defendants are entitled to judgment

as a matter of law.

### b.  Malicious Prosecution

The Plaintiff alleges that the Defendants are liable for malicious prosecution.

> There are six elements which must be proven in a malicious prosecution action: (1) institution or continuation of original judicial proceedings, either civil or criminal;(2) by, or at the instance of, the defendants;(3) termination of such proceedings in plaintiff's favor;(4) malice in instituting the proceedings;(5) lack of probable cause; and(6) resulting injury or damage.

*Jordan v. Deese*, 317 S.C. 260, 261-62, 452 S.E.2d 838, 839 (1995) (quoting *Gaar v. North Myrtle Beach Realty Co.*, 287 S.C. 525, 339 S.E.2d 887 (Ct.App.1986)).

As to Defendant Cannon, there is no evidence in the case at bar that he is liable for malicious prosecution. When viewing the facts in the light most favorable to the Plaintiff, Defendant Cannon did not have any role in acquiring the Plaintiff's arrest warrant, the dismissal of that warrant, or instituting the proceeding. Therefore, this court recommends that Defendant Cannon is entitled to summary judgment as a matter of law.

The Town and Defendant Jones are entitled to judgment as a matter of law because the record does not contain any evidence that the Plaintiff's arrest lacked probable cause or that Defendant Jones acted with malice.

> Probable cause means "the extent of such facts and circumstances as would excite the belief in a reasonable mind acting on the facts within the knowledge of the prosecutor that the person charged was guilty of a crime for which he has been charged, and only those facts and circumstances which were or should have been known to the prosecutor at the time he instituted the prosecution should be considered."

*Law v. S. Carolina Dep't of Corr.*, 368 S.C. 424, 436, 629 S.E.2d 642, 649 (2006) (quoting *Parrott v. Plowden Motor Co.*, 246 S.C. 318, 322, 143 S.E.2d 607, 609 (1965)). When determining if probable cause exists, "the facts must be 'regarded from the point of view of the party prosecuting; the question is not what the actual facts were, but what he honestly believed them to be.'" *Id.* (quoting *Eaves v. Broad River Elec. Co-op., Inc.*, 277 S.C. 475, 478, 289 S.E.2d 414, 416 (1982)). In the case at bar, Defendant Jones swore an affidavit to support the issuance of warrant by Judge Coleman. (Dkt. No. 29-3 ¶¶ 11-12.) Based on the dash camera video,

probable cause existed to charge the Plaintiff with violation of the Ordinance. (Dkt. No. 35-3.) The Plaintiff was within 20 feet of Defendant Cannon, a town employee, in the middle of a traffic stop to confront Defendant Cannon about an unrelated matter.  The Plaintiff attempted to have Defendant Cannon stop investigating the traffic violation and go with the Plaintiff to town hall. When viewing the facts in a light most favorable to the Plaintiff, probable cause existed to charge him under the Ordinance.

The record does not contain any evidence that Defendant Jones acted with malice when instituting the proceedings against the Plaintiff.  Defendant Jones averred in his affidavit that his decision to seek a warrant was based on his belief probable cause existed that the Plaintiff had violated the Ordinance based on the dash camera video. (Dkt. No. 29-3 ¶8.)  The Plaintiff has not pointed to any evidence in the record to contradict Defendant Jones' affidavit. When viewing the facts in a light most favorable to the Plaintiff, the record does not contain evidence to support a claim for malicious prosecution, and this court recommends that summary judgment be granted in favor of all Defendants.

### c.  Civil Conspiracy & Intentional Infliction of Emotional Distress

The Plaintiff concedes summary judgment to the Defendants on a.  Civil Conspiracy and Intentional Infliction of Emotional Distress. (Dkt. No. 35 at 7.)

### d.  Respondeat Superior

The Plaintiff alleges that the Town is liable for all of the actions of Defendants Cannon and Jones under a theory of *respondeat superior*. (Dkt. No. 21 ¶¶41-45.)  *Respondeat Superior* is not an independent cause of action. *Buchanan v. Fairfield Resorts, Inc.*, No. 1:04-CV-725, 2005 WL 3157580, at *3 (M.D.N.C. Nov. 25, 2005).  To the extent the Plaintiff alleges that *respondeat superior* applies to § 1983 claims, the Plaintiff's claims fail as a matter of law.  The

doctrines of vicarious liability and *respondeat superior* are generally not applicable in § 1983 actions. *Vinnedge v. Gibbs*, 550 F.2d 926, 927-29 (4th Cir. 1977); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").

## CONCLUSION

Wherefore, it is RECOMMENDED that Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 33) be GRANTED as to the unconstitutionality of the Ordinance and as to the unconstitutionality of the Ordinance as applied to the Plaintiff by the Town.  It is further RECOMMENDED that the Plaintiff's Motion be DENIED as to Defendants Jones and Cannon. It is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 29) be GRANTED as to the Plaintiff's state law claims against all Defendants and as to Plaintiff's § 1983 claim against Defendants Cannon and Jones.  It is further RECOMMENDED that Defendants' Motion (Dkt. No. 29) be DENIED as to the Town's § 1983 liability and as to the constitutionality of the Ordinance and the constitutionality of the Ordinance as applied to the Plaintiff by the Town.

IT IS SO RECOMMENDED.


July 20, 2016                                    _____

Charleston, South Carolina              MARY GORDON BAKER
                                                      UNITED STATES MAGISTRATE JUDGE

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).