**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| GARLAND RIVER BAKER, | ) | |
| | ) | No. 2:15-cv-01471-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| LIEUTENANT GRANT CANNON, | ) | |
| POLICE CHIEF DAVID JONES, and | ) | |
| THE TOWN OF TURBEVILLE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 42, that the court grant in part plaintiff Garland River Baker's ("Baker") partial motion for summary judgment, ECF No. 33, and deny in part defendant Town of Turbeville ("Turbeville"), Town of Turbeville Police Chief David Jones ("Chief Jones"), and Town of Turbeville Police Lieutenant Grant Cannon's ("Cannon") motion for summary judgment, ECF No. 29. For the reasons set forth below, the court adopts the R&R, grants in part and denies in part Baker's motion for partial summary judgment, and denies in part Turbeville's motion for summary judgment. Additionally, the court adopts those portions of the R&R which are not inconsistent with this Order.

## I.  BACKGROUND

Plaintiff Garland River Baker brings this action against the above-captioned defendants under 42 U.S.C. § 1983 for violations of his First Amendment right to Free Speech which allegedly occurred during his arrest pursuant to Turbeville Town Turbeville Ordinance 15-9 ("Turbeville Ordinance"). Baker additionally seeks a

1

declaratory judgment that the Turbeville Ordinance is unconstitutional on its face and as applied to him pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. Finally, Baker brings tort claims against the defendants under South Carolina law for abuse of criminal process, malicious prosecution, civil conspiracy, intentional infliction of emotional distress, and respondeat superior. This matter is before the court on the parties' cross motions for summary judgment. Specifically, Baker moves for partial summary judgment on the constitutionality of the Turbeville Ordinance and, to the extent the Turbeville Ordinance is unconstitutional, on his cause of action under 42 U.S.C. § 1983. See ECF No. 33. Defendants Lieutenant Grant Cannon, Chief of Police David Jones, and the Town of Turbeville move for summary judgment on all of Baker's claims. See ECF No. 29.

## A. Factual Allegations

The R&R ably recites the relevant facts, and it is unnecessary to review the details of the complaint, depositions, and arrest reports that constitute the factual record to this point. In short, Baker resides in Turbeville, South Carolina and was arrested by Chief Jones for the violation of the Turbeville Ordinance. ECF No. 42-1. The full text of the Turbeville Ordinance states that:

> It shall be unlawful for any person or persons willfully to approach nearer than twenty (20) feet to any town employee for the purpose of interfering or stopping that employee from carrying out his/her duties.

ECF. No. 30.

Baker's arrest was based on an incident between Baker and Cannon, a lieutenant with the Turbeville Police Department, on February 15, 2013. ECF No. 21 ¶ 13. Much of the encounter was captured on video from the dashboard camera, although the sound

2

quality is poor and statements by the parties are difficult to hear.  ECF No. 35-3.  The video shows Cannon approaching a motorist and informing him of the reason for the traffic stop, and Baker walking up to the motorist's open window and having a discussion with him.  Id.  At this point, Cannon approached Baker to ask if he needs assistance and Baker refused, instead asking Cannon if the Turbeville town administrator had talked to him about speeding as per Baker's request and then requesting that Cannon come with him, ostensibly to Turbeville Town Hall.  Id.  Cannon then informed Baker that he needed to leave or he would be arrested, at which point Baker left.  Id.  Cannon did not arrest Baker for violating the Turbeville Ordinance.

Cannon reported the incident to Chief Jones, ECF Nos. 29-2 ¶ 9; 29-3 ¶ 5, who reviewed the video from the dashboard camera and concluded that he had probable cause to charge Baker with violating the Turbeville Town Ordinance.  ECF No. 29-3 ¶ 8.  At no point did Chief Jones confer with Cannon on the decision to obtain an arrest warrant for Baker.  Id. ¶ 23.  Chief Jones arrested Baker on March 8, 2013.  Id. ¶¶ 16-17.  Chief Jones then dismissed the warrant by asking the presiding judge to nolle prosse Baker's warrant, again without conferring with Cannon.  Id. ¶¶ 22-23.

**B.  Procedural History**

The magistrate judge's R&R recommends the following disposition of the parties' motions:  (1) grant Baker's motion for partial summary judgment on the unconstitutionality of the Turbeville Ordinance facially and as applied to Baker; (2) deny Baker's motion as it pertains to Chief Jones and Cannon; (3) grant defendants' motion for summary judgment as to Baker's state law claims against all defendants and as to Baker's § 1983 claim against Cannon and Chief Jones; (4) deny defendants' motion as to

3

Turbeville's § 1983 liability and as to the constitutionality of the Turbeville Ordinance facially and as applied to Baker.

Turbeville filed timely objections to the R&R, ECF No. 43, and Baker filed a response, ECF No. 46, to which Turbeville replied, ECF No. 48. The matter is now ripe for the court's review.

## II. STANDARDS OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at

4

249.  The court should view the evidence in the light most favorable to the nonmoving

party and draw all justifiable inferences in its favor.  Id. at 255.

"The party seeking summary judgment shoulders the initial burden of

demonstrating to the district court that there is no genuine issue of material fact."  Major

v. Greenville Hous. Auth., No. 6:12-cv-183, 2012 WL 3000680, at *1 (D.S.C. Apr. 11,

2012).  Nevertheless, "when a properly supported motion for summary judgment is made,

the adverse party 'must set forth specific facts showing that there is a genuine issue for

trial.'"  Id. (quoting Fed. R. Civ. P. 56(e)).  The plain language of Federal Rule of Civil

Procedure 56(c) "mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  "[C]onclusory allegations or denials, without more, are insufficient to preclude

the granting of the summary judgment motion."  Major, 2012 WL 2000680, at *1.

## III.  DISCUSSION

Turbeville lists three objections to the R&R.  Specifically, Turbeville asserts that

the magistrate judge improperly:  (1) granted Baker's motion for partial summary

judgment because the Turbeville Ordinance is unconstitutionally vague on its face; (2)

granted Baker's motion for partial summary judgment because the Turbeville Ordinance

is unconstitutional as applied; and (3) denied in part Turbeville's motion for summary

judgment on Baker's claim for alleged First Amendment retaliation asserted under 42

5

2:15-cv-01471-DCN    Date Filed 09/28/16    Entry Number 49    Page 6 of 23

U.S.C. § 1983.  ECF No. 43-1.  The court addresses each of these objections in turn. The court also finds that the Turbeville Ordinance is unconstitutionally overbroad.[1]

### A.    Turbeville Ordinance is Facially Unconstitutional

For a statute or ordinance to be facially invalid, the court "first determine(s) whether the enactment reaches a substantial amount of constitutionally protected conduct."  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982).  As a threshold matter, the court finds that the conduct proscribed by the Turbeville Ordinance falls squarely within the purview of the First Amendment because the term "interfere" as used in the Turbeville Ordinance encompasses protected speech as well as physical conduct.

Turbeville argues that the Turbeville Ordinance "does not purport to govern speech, expression, or association," and instead regulates conduct by barring individuals from physically approaching within twenty feet of town employees with the intent to "interfere" or "stop" a town employee from carrying out his or her duties.  ECF No. 43-5. While this is a creative argument, it is unconvincing.  The "or stopping" language in the Turbeville Ordinance does not, as Turbeville asserts, clarify to a person of "ordinary intelligence" that the entire Turbeville Ordinance addresses physical conduct as opposed to encompassing speech as well.  ECF No. 43.  It is true that the term "stop" in the Turbeville Ordinance could be understood to refer to physical conduct, as "stop" is

---

[1]    Defendants did not include an argument that the Turbeville Ordinance is not unconstitutionally overbroad in the body of their Objections to the R&R, but a footnote states that "the Report devotes several pages to a discussion of potential overbreadth concerns, but makes no actual findings or recommendations that the Turbeville Ordinance be invalidated on overbreadth grounds . . . [t]he Defendants obviously disagree with that portion of the magistrate judge's discussion."  ECF No. 43-2.  To clarify the multiple alternative bases for ruling that the Turbeville Ordinance is unconstitutional for violating the First Amendment, the court also analyzes overbreadth.

defined as "to cause (someone or something) to not move, walk, etc., after doing so before."  "Stop." Merriam-Webster Learner's Online Dictionary. 2016. http://www.merriam-webster.com (27 Sept. 2016).  To "interfere," on the other hand, is "to become involved in the activities and concerns of other people when your involvement is not wanted."  "Interfere." Merriam-Webster Learner's Online Dictionary. 2016. http://www.merriam-webster.com (27 Sept. 2016).  Therefore, the use of the term "interfere" in the Turbeville Ordinance, without any other context, could very well be understood to mean prohibit "involvement" through speech or language.  By including the term "interfere" without a definition or delineation of exactly what "interfere" means, the Turbeville Ordinance regulates speech as well as physical conduct.

Furthermore, the Turbeville Ordinance's use of the word "or" between "interfere" and "stop" means that a person can be arrested for either interfering, which refers to becoming "involved with" the activities of other people and could include speech, or stopping, which could be understood to solely refer to physical impediment.  Even supposing that a person of "ordinary intelligence" would understand that the meaning of "stop" in the Turbeville Ordinance only covers physical activity, this does not mean that he would understand that the word "interfere" carries the same limitation.  Turbeville's argument that "interfere" refers to physical conduct because "stop" refers to physical conduct, and that "interfere" adds no additional value to the Turbeville Ordinance not only conflates the meanings of the two words but also renders the words "or interfere" superfluous within the meaning of the ordinance.  Traditional principles of statutory interpretation do not allow this court to entertain such surplusage.  See e.g, Pa. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 562 (1990) ("Our cases express a deep

reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.").

Adding further support for this court's conclusion that the Turbeville Ordinance regulates speech, the Supreme Court found in <u>City of Houston, Tex. v. Hill</u>, 482 U.S. 451 (1987) that by making it unlawful for "'any person to . . . in any manner oppose, molest, abuse or <u>interrupt</u> any policeman in the execution of his duty" the ordinance at issue prohibited verbal interruptions of police officers and thus restricted speech protected by the First Amendment.  Here, Turbeville argues that Baker violated the Turbeville Ordinance when he "interfered with a traffic stop in which Lt. Cannon was engaged and attempted to reprove Lt. Cannon."  ECF No. 5-2.  Baker's "reproval" of Cannon during the traffic stop, by asking if "anyone had talked to him about his speeding" and requesting that Cannon come with him to Turbeville Town Hall are verbal criticisms of Cannon that are protected speech under the First Amendment.  Finally, the very need to have a 20–foot buffer zone around a town employee to prevent "interference" signals that the Turbeville Ordinance is regulating protected speech, since it is almost impossible to physically interfere with someone who is 2o feet away.

Accordingly, this court finds that while the Turbeville Ordinance does regulate physical conduct, by including the term "interfere" it also regulates speech.  Having established that the Turbeville Ordinance regulates speech, it therefore falls within the purview of the First Amendment.  "The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'"  <u>Reed v. Town of Gilbert, Ariz.</u>, 135 S. Ct. 2218, 2226 (2015) (quoting U.S. Const., Amdt. 1).

8

Having established that the Turbeville Ordinance implicates speech, the court next turns to analyze if the Turbeville Ordinance is unconstitutionally overbroad and vague on its face because it criminalizes a substantial amount of constitutionally protected speech, and confers impermissible discretion on Town of Turbeville police officers, judges, and juries to determine when spoken words constitute "interference" with a town employee such that a person can be punished by criminal penalties.

### 1.     Unconstitutionally Vague

A law is void for vagueness if its prohibitions are not "clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). An ordinance is unconstitutionally vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). While fulfilling only one prong of this test is required for a statute to be unconstitutionally vague, the Turbeville Ordinance fulfills both.

At the outset, it is important to understand that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston, 482 U.S. at 461. Generally, speech directed at police officers, which are "town employees" within the meaning of the Turbeville Ordinance, can be censored only where it is "shown likely to produce a clear and present danger" that is more than "public inconvenience, annoyance, or unrest." Terminiello v. City of Chicago, 337 U.S. 1, 4 (1949). The Supreme Court notes that the "freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal

characteristics by which we distinguish a free nation from a police state," <u>City of Houston</u>, 482 U.S. at 462–463.

Moving to the first prong of the <u>Hill</u> test, the Turbeville Ordinance fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  A number of courts have struck down ordinances with similar "interference" language as unconstitutionally vague.  In <u>McCoy v. City of Columbia</u>, 929 F.Supp.2d 541 (D.S.C. 2013), the District of South Carolina found that a city ordinance barring "interference" with a police officer's duties was unconstitutionally vague.  The <u>McCoy</u> court found that that while the ordinance did not specifically proscribe speech, it implicated protected speech and since the term "interfere" was not defined, a person of ordinary intelligence could only speculate as to what the ordinance prohibited.  <u>Id.</u> at 547. In <u>Town of Honea Path v. Flynn</u>, 176 SE.2d 564 (S.C. 1970), the South Carolina Supreme Court found it troubling that the challenged ordinance failed to indicate "just what kind of word or words would amount to interference with an officer" in striking down a similarly worded "interference" ordinance as unconstitutionally vague.  <u>Id</u>, at 567.  The ordinance at issue in <u>Town of Honea Path</u> made it unlawful "for any person to assault, resist, abuse or in any manner, by word or act, interfere with a police officer or any other officer or employee of the City in the discharge of his duty."  <u>Id.</u> at 566.

Similar to the City of Columbia ordinance in <u>McCoy</u> and the Town of Honea Path ordinance in <u>Town of Honea Path</u>, the Turbeville Ordinance prohibits any persons from "interfere[ing]" with a town employee, and there is no definition of "interfere" or additional context in the statute to guide a person of ordinary intelligence as to what conduct is prohibited.  For example, Chief Jones had an extremely broad understanding

10

of what constitutes "interference" under the Turbeville Ordinance.  During his deposition, Chief Jones stated that an "officer can arrest" a person under the Turbeville Ordinance for asking "Hey, where's the post office" while the officer was writing a police ticket.  ECF No. 33, Ex. 5 at 11.  A person of ordinary intelligence would not understand that asking a police officer the location of the post office could constitute "interference" under the Turbeville Ordinance, and subject the geographically-challenged citizen to criminal penalties.

The "interfere" ordinance here is distinguishable from what the court will call "obstruction" ordinances, which some courts have upheld against First Amendment challenges.  In Lawrence v. 48th Judicial Dist. Ct., 560 F.3d 475, 482 (6th Cir. 2009), the Sixth Circuit found that an ordinance that prohibited resisting, interfering, and hindering police officers suggested "some kind of physical interference" and was not overbroad. Similarly, in Martin v. City of Oklahoma City, 2016 WL 1529927 (W.D. Okla. Apr. 14, 2016), the Western District of Oklahoma found that an ordinance providing that "[n]o person shall obstruct, attempt to obstruct or disobey a lawful command of any police officer in the discharge of his/her duties by threat or intimidation or force" was akin to a disorderly conduct statute such as the one that the Supreme Court upheld in Colten v. Kentucky, 407 U.S. 104 (1972).  However, the Turbeville Ordinance is distinguishable from the obstruction ordinances at issue in Lawrence and Martin because it does not specify that a person must "obstruct" a town employee from fulfilling their duties to violate the ordinance.  In fact, the word "obstruct" is nowhere to be found in the Turbeville Ordinance.  There is no guidance to a "person of ordinary intelligence" that the term "interfere" in the Turbeville Ordinance only refers to speech that impedes or

actually hinders a town employee's execution of official tasks.  Instead, the wording of the ordinance allows "interfere" to cast a broad prohibitory net over any speech directed toward a town employee.  Thus, it is not like ordinances that "include series of terms having related meanings and thus provide additional context for the person of ordinary intelligence to understand what conduct is prohibited."  McCoy, 929 F. Supp. 2d at 553.

Excerpts from Chief Jones and Cannon's depositions prove that even Turbeville police officers, who are charged with implementing the ordinance as part of their duties, have differing views of what constitutes "interference" under the Turbeville Ordinance. When asked how, exactly, Baker had interfered with his traffic stop, Cannon answered that Baker had "stopped me from conducting an investigation of the traffic stop that I was on.  I had to turn my attention towards him, away from the two parties that I should have been watching."  ECF No. 33, Ex. 4 at 15–16.  Even though Baker's interruption did not stop Cannon from writing the ticket, and Baker left immediately after Cannon said "Get in your truck, or I'll take you to jail," Cannon interpreted this as an "interference" under Turbeville Ordinance.  Id. at 16.  Chief Jones, on the other hand, stated in his deposition that even a passerby inquiring about the location of the post office while the officer was writing a police ticket constituted "interference" under the ordinance.  ECF No. 33, Ex. 5 at 11.  The scope of interpretations even among Turbeville police officers of what, exactly, constitutes "interference" under the Turbeville Ordinance suggests that it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits."  Hill, 530 U.S. at 732.

This breadth of possible interpretations of the term "interference," as evidenced by Chief Jones and Cannon's answers to deposition questions, also serves to fulfill the

second prong of <u>Hill</u>, which states that the statute or ordinance is unconstitutionally vague if it "authorizes or even encourages arbitrary and discriminatory enforcement." <u>Hill</u>, 530 U.S. at 732.  When given the hypothetical of a person inquiring about the location of the post office while an officer was writing a traffic ticket, Chief Jones answered that while this inquiry constituted interference and "an officer can arrest based on that," it is "up to the officer's discretion whether or not he wants to enforce that ordinance."  ECF No. 33, Ex. 5 at 11.  The court notes that Cannon did not arrest or prosecute Baker, even though he felt that Baker's presence "presented a distraction which interfered" with his traffic stop.  ECF No. 29, Ex. 2 at 3.  Chief Jones, who was not present on the scene and only viewed the video, made the decision to arrest Baker because he thought that Baker's presence was for the "purpose of stopping Lt. Cannon from conducting his official duties."  ECF No. 29, Ex. 3 at 4–5.  This is an example of the arbitrary and discriminatory enforcement that the Turbeville Ordinance authorizes, and that fulfills the second prong of <u>Hill</u>.  As the <u>Town of Honea Path</u> court warned, "[t]o allow police officers . . . the discretion to arrest and prosecute those whom they feel have made inappropriate remarks upon a charge of interference would . . . invite gross abuses of discretion and impose unfair penalties [sic] and burdens upon the citizenry."  <u>Town of Honea Path</u>, 255 S.C. at 40.

Defendants argue that the Turbeville Ordinance contains two scienter requirements that mitigate any vagueness concerns.  ECF No. 43-6.  Scienter is defined as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission."  Black's Law Dictionary (10th ed. 2014).  The Supreme Court has held that "a scienter requirement may mitigate a law's vagueness, especially

with respect to the adequacy of notice to the complainant that his conduct is proscribed."
Village of Hoffman Estates v. Flipside, 455 U.S. 489, 499 (1982).

Turbeville argues that the that the alleged offender must "willfully approach nearer than 20 feet" language in the Turbeville Ordinance acts as a scienter requirement to mitigate vagueness by governing only the very narrow range of conduct of a person "willfully" approaching within 20 feet of a town employee "for the purpose of interfering or stopping that employee from carrying out his/her duties." ECF No. 36-3. While none of the "interference" or "obstruction" ordinances that the court has examined so far include this type of buffer zone, the 20-foot buffer zone in the Turbeville Ordinance is analogous to the buffer zones around abortion clinics that the Supreme Court has repeatedly analyzed in First Amendment challenges to buffer zones around abortion clinic entrances. See, e.g; Schenck v. Pro-Choice Network Of W. New York, 519 U.S. 357 (1997) (floating buffer zones requiring protestors to stay 15 feet from people and vehicles entering and leaving abortion clinics violated First Amendment by burdening more speech than was necessary to serve relevant governmental interests but fixed buffer zones requiring abortion protestors to remain 15 feet from clinic doorways, driveways, and driveway entrances were necessary to ensure access); Madsen v. Women's Health Ctr., Inc., 512 U.S. 753 (1994) (establishing 36–foot buffer zone around clinic entrances and driveway and imposing limited noise restrictions did not violate First Amendment). Additionally, while the "intent to interfere or stop the town employee from carrying out his duties" may qualify as a scienter requirement, it serves to aggravate the unconstitutionality of the Turbeville Ordinance because it encompasses protected speech by requiring that a person have the "purpose of interfering" when approaching a town

employee.  The wording of the scienter requirement thus prohibits, as in the case at hand, a person approaching a police officer from "interfere[ing]" with a police officer by verbally criticizing how he is carrying out his duties.  As discussed above, criticism of police officers is speech protected by the First Amendment, and the term "interfere" as used in the Turbeville Ordinance is unconstitutionally vague.  Thus, this scienter requirement serves to exacerbate rather than mitigate the voidness problems of the Turbeville Ordinance.

### a.  Substantially overbroad

For a statute or ordinance to be invalidated on its face, it must be "substantially overbroad."  City of Houston, 482 U.S. at 458 (citing New York v. Ferber, 458 U.S. 747, 769 (1982).  In Broadrick v. Oklahoma, 413 U.S. 601, 611–12 & n. 9 (1973), the Supreme Court noted that the First Amendment needs "breathing space," and that statutes attempting to restrict its exercise must be narrowly drawn and represent considered legislative judgment that a specific mode of expression must give way to other compelling needs of society.  Since the Turbeville Ordinance creates a misdemeanor criminal offense for violators, it is analyzed under a heightened standard for ordinances that make First Amendment protected speech a criminal offense.  As such, it may be held facially invalid if it prohibits a "substantial amount of constitutionally protected conduct" even if it also has a legitimate application.  Id. at 459 (citing Winters v. New York, 333 U.S. 507, 515, (1948)).

First, the Turbeville Ordinance prohibits speech that "interferes" with a town employee, inevitably sweeping in protected speech such as Baker's verbal criticism of Cannon.  In City of Houston, the Supreme Court struck down City of Houston Ordinance

34-11, which stated that "it shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making his arrest" as overbroad because the terms of the ordinance prohibited speech that "in any manner" interrupted a police officer performing his duties. City of Houston, 482 U.S. at 454.  Likewise, the Turbeville Ordinance here extends to speech that "interferes" with any town employee.  If anything, as the R&R emphasizes, ECF No. 42 at 10, the Turbeville Ordinance is even broader than the City of Houston ordinance because it extends to any town employee as opposed to being restricted to interfering with just police officers.  The City of Houston court also found that City of Houston Ordinance 34-11was overbroad because it was "not limited to fighting words nor even to obscene or opprobrius language" but prohibited protected speech.  City of Houston, 482 U.S. at 461.  In so finding, the City of Houston court compared the ordinance to the municipal ordinance in Lewis v. City of New Orleans, 415 U.S. 130 (1974), where the Supreme Court had held that a municipal ordinance that made it a crime "for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty" was facially overbroad.  Id. at 460.  The Lewis Court reasoned that the ordinance "punishe[d] only spoken words" and was not limited in scope to fighting words that "'by their very utterance inflict injury or tend to incite an immediate breach of the peace.'"  Id. (quoting Chaplinsky v. New Hampshire, 315 U.S. 568 (1942)).

Like the ordinances at issue in City of Houston and Lewis, the language of the Turbeville Ordinance is not limited to fighting words or to obscene language, but

prohibits any speech that "interferes" with a town employee.  As demonstrated in the case at hand, even a verbal "reproval" of a police officer during a traffic stop constitutes "interference" under the Turbeville Ordinance.  (This act of reproval certainly does not rise to the standard for fighting words or for obscene language that the Supreme Court has carved out narrow exceptions from First Amendment protection for.)  Because the Turbeville Ordinance punishes spoken words, as evidenced by Baker's arrest under the ordinance for verbally "reproving" Cannon during a traffic stop, and is not limited in scope to fighting words, it is facially overbroad.

Finally, the Turbeville Ordinance provides police with "unfettered discretion" to arrest individuals for words or conduct that annoys or offends them.  The Supreme Court has invalidated laws that give this sort of standardless, unguided discretion as infringing on the "breathing space" that First Amendment freedoms need.  See Nat'l Ass'n for Advancement of Colored People v. Button, 371 U.S. 415, 432 (1963) ("The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.").  In the case at hand, Cannon chose not to arrest Baker at the scene but instead called Chief Jones to inform him that Baker "began trying to question" him while Cannon was in the middle of a traffic stop.  ECF No. 29-3 at 2.  Then, upon viewing the dash cam videotape Chief Jones made the decision to arrest Baker for violating the Turbeville Ordinance the day after Baker's interruption.  In fact, Cannon states that he had no "involvement or input whatsoever in the issuance, service, dismissal, or any other aspect of the warrant against Mr. Baker."

17

ECF No. 29-3 at 3. This is an example of the unfettered discretion that the Turbeville Ordinance provides police with.

Since the term "interfere" in the Turbeville Ordinance governs speech as well as physical conduct, is not restricted to obscene language or fighting words, and gives officers "unfettered discretion" to make arrests for mere words, the court concludes that it is unconstitutionally overbroad on its face.

### B.    Turbeville Ordinance is Unconstitutional as Applied

Defendants also object to the magistrate judge's finding granting Baker summary judgment for his claim that the Turbeville Ordinance as applied to him violated his First Amendment Right to Freedom of Speech and Fourteenth Amendment Due Process Clause. ECF No. 43-2.

As noted by the McCoy court, an ordinance may be unconstitutional on its face and yet be constitutionally applied. McCoy, 929 F. Supp. 2d at 554. Turbeville's main argument is that there is "no evidence in the record" that Baker's speech was a motivating cause of his arrest as opposed to his physical conduct in walking within 20 feet of Cannon and physically remaining between Cannon and the stopped motorist while Cannon was engaged in an official traffic stop. ECF No. 48-3. This argument is unconvincing on the current record. Turbeville argues that Baker forced Cannon to divide his attention between continuing his traffic stop and engaging Baker, thus constituting "interference" in violation of the Turbeville Ordinance, and that Baker's speech played no role in his arrest. ECF No. 48-3. However, in an earlier stage of briefing Turbeville argued that Baker violated the Turbeville Ordinance when he "interfered with a traffic stop in which Lt. Cannon was engaged and attempted to reprove

18

Lt. Cannon." ECF No. 5-2. The First Amendment protected speech here includes both Baker's numerous past complaints to Turbeville town officials regarding Cannon's reckless driving while on duty and Baker's comments to Cannon during the traffic stop itself. Baker's "reproval" of Cannon during the traffic stop, by asking if "anyone had talked to him about his speeding" and requesting that Cannon come with him to Turbeville Town Hall are verbal criticisms of Cannon that are protected speech under the First Amendment. At no point in the videotape does Baker's interference with Cannon's traffic stop involve Baker physically impeding Cannon's ability to conduct the traffic stop. ECF No. 35, Ex. 3. Yet when he was asked how Baker had interfered with his traffic stop, Cannon answered that Baker had "stopped me from conducting an investigation of the traffic stop that I was on. I had to turn my attention towards him, away from the two parties that I should have been watching." ECF No. 33, Ex. 4 at 15–16.

The court finds upon a review of the record that there is no evidence to find that Baker was arrested because of any possible physical conduct from Baker approaching within 20 feet of Cannon with the intent of "stopping" him from performing his official duties as opposed to his verbal "interference" of Cannon during the traffic stop. Thus, the Turbeville Ordinance was unconstitutional as applied to Baker.

### C.    First Amendment Retaliation under 42 U.S.C. § 1983

Finally, defendants object to the magistrate judge's recommendation that defendants' motion for summary judgment as to Baker's § 1983 claim for retaliatory arrest against Turbeville be denied. ECF No. 48-3.

As a threshold matter, Turbeville is the only remaining defendant for Baker's First Amendment retaliation claim because defendants Jones and Cannon are protected from suit by qualified immunity. ECF No. 42-20. A plaintiff suing a municipal entity under 42 U.S.C. § 1983 must show that his injury was caused by a "municipal policy or custom." Monell v. Dept. of Soc. Servs. New York City, 436 U.S. 658, 694 (1978). While a municipality cannot be held liable under § 1983 solely because it employed a tortfeasor, municipal liability may be imposed for "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. Municipalities cannot assert a qualified immunity defense. Owen v. City of Independence, 445 U.S. 622 (1980). The Fourth Circuit has found that "a situation may arise in which a finding on of no liability on the part of the individual municipality actors can co-exist with a finding of liability on the part of the municipality" and that "such a verdict could result when the individual defendants successfully assert a qualified immunity defense." Int'l Ground Transp., Inc. v. Mayor of Ocean City, 475 F.3d 214, 219 (4th Cir. 2007). Therefore, even though Chief Jones has qualified immunity, his allegedly retaliatory arrest of Baker opens Turbeville up to municipal liability for Baker's First Amendment retaliation claim under 42 U.S.C. § 1983 under the Fourth Circuit's holding in Int'l Ground Transp., Inc.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he was (1) "deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) the conduct was "committed by a person acting under color of state law." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). The court has already found that Turbeville

deprived Baker of his First Amendment rights because he was arrested under a facially unconstitutional ordinance. Therefore, the first prong of the Dowe test is fulfilled. A finding of a constitutional violation is conclusive as to a municipality's liability. Int'l Ground Transp, 475 F.3d at 219.

The First Amendment right to free speech includes the right to be free from retaliation by a public official and prohibits government officials from subjecting an individual to "retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). Retaliatory acts place informal restraints on speech that allow the government to "produce a result which [it] could not command directly." Perry v. Sindermann, 408 U.S. 593, 597 (1972). However, the Fourth Circuit has found that not every retaliatory action is actionable retaliation. See DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir.1995) ("Not every restriction is sufficient to chill the exercise of First Amendment rights, nor is every restriction actionable, even if retaliatory."). The determination of if an arrest was retaliatory turns on the motives of the law enforcement officer and if there was enough probable cause to support the arrest.

In Tobey, the Fourth Circuit ruled that a cognizable First Amendment retaliation claim requires a plaintiff to show: (1) "that [plaintiff's] speech was protected;" (2) "defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech;" and (3) "a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action." Tobey, 706 F.3d at 387 (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685–86 (4th Cir.2000)). The causation requirement of Tobey requires the claimant to show that "but for the protected expression the [government

2:15-cv-01471-DCN     Date Filed 09/28/16     Entry Number 49     Page 22 of 23

official] would not have taken the alleged retaliatory action." Id. at 390 (quoting Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir.1990)).

In support of its motion for summary judgment, Turbeville emphasizes that Chief Jones had probable cause to arrest Baker because Baker's interruption of Cannon forced Cannon to divide his attention between continuing his traffic stop and engaging Baker, thus constituting "interference" in violation of the Turbeville Ordinance, and that Baker's speech played no role in his arrest. ECF No. 48-3. The law on how probable cause affects retaliatory arrest claims under § 1983 is not well-settled. The Supreme Court has ruled that a plaintiff must prove the absence of probable cause to prove a retaliatory prosecution claim in 42 U.S.C. § 1983 retaliatory-prosecution suits. Hartman v. Moore, 547 U.S. 250 (2006). In Reichle v. Howards, 132 S. Ct. 2088 (2012), the Supreme Court declined to rule on the question of whether Hartman's ruling applied to First Amendment retaliatory arrest claims but noted that "[a]lthough Hartman involved only a retaliatory prosecution, reasonable officers could have questioned whether the rule of Hartman also applied to arrests" and "could have interpreted Hartman's rationale to apply to retaliatory arrests" during the 2006 arrest in question. Id. at 2095. In McCoy, the District of South Carolina court noted that the existence of probable cause to support an arrest alone does not bar a § 1983 retaliatory arrest claim. McCoy, 929 F. Supp. 2d at 559 ("[M]erely showing that the Officer Defendants acted with probable cause may not foreclose the possibility of a First Amendment violation."). Following this reasoning, even if Chief Jones did have probable cause to arrest Baker for violating the Turbeville Ordinance, this does not immediately foreclose the possibility of a retaliatory arrest First Amendment violation.

22

A reasonable jury could find that Chief Jones was primarily motivated by animus against Baker because of his "reproval" of Cannon during the traffic stop and Baker's past complaints against Cannon's reckless driving in arresting Baker for violating the Turbeville Ordinance. Even if a jury did find that Chief Jones had probable cause for the arrest, this does not bar Baker's § 1983 retaliatory arrest claim against Turbeville. Therefore, the court denies defendant's motion for summary judgment on Baker's § 1983 claim.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R, ECF No. 42, **GRANTS** plaintiff's motion for partial summary judgment, ECF No. 33, and **GRANTS IN PART AND DENIES IN PART** defendants' motion for summary judgment, ECF No. 29.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 28, 2016**
**Charleston, South Carolina**